IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA H.,<br><br>              Claimant,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>              Respondent. | No. 20 CV 7137<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Anna H.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 10]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 12, 16] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 12] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 16] is granted.

## PROCEDURAL HISTORY

On March 3, 2018, Claimant filed a Title II application for DIB alleging disability beginning on October 14, 2015. (R. 177–86). Her claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 76–102, 117–19). On January 7, 2020, Claimant appeared and testified at a hearing before ALJ Deborah M. Giesen. (R. 13–44). ALJ Giesen also heard testimony by telephone on that date from impartial vocational expert ("VE") Thomas A. Gusloff. (R. 45–51). On January 30, 2020, ALJ Giesen denied Claimant's claim for DIB. (R. 56–71).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of October 14, 2105. (R. 61). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 61–63). Specifically, Claimant has fibromyalgia, Sjogren's syndrome, thoracic outlet syndrome, and migraine headaches. *Id.* The ALJ also noted two non-severe impairments – asthma and a resolved pulmonary embolism – but concluded there was no evidence that those diagnoses were expected to last twelve months or longer, or that they minimally affected Claimant's ability to engage in basic work-related activities. *Id.* Finally, the ALJ acknowledged that Claimant exhibited some

symptoms indicative of anxiety, although she had no formal diagnosis and had received little to no mental health treatment. (R. 62–63). In assessing these anxiety-related symptoms, the ALJ assessed the "paragraph B" criteria and noted Claimant was mildly limited in the four broad areas of functioning: understanding, remembering, or applying information, interacting with others, concentration, persistence, or pace, and adapting or managing oneself. (R. 62–63). The state agency consultants were in accord regarding the "paragraph B" criteria. (R. 63).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 63–64). In particular, the ALJ considered listing 14.10 related to Sjogren's syndrome and determined that listing criteria had not been satisfied. *Id*. In coming to this conclusion, the ALJ detailed the specific findings that the listing requires and noted that the record did not support a finding of involvement of two or more body systems due to Sjogren's syndrome, nor did the record suggest that one body system or organ is moderately or severely impacted. (R. 64). Nor did the record show, as partially explored above, that Claimant had a marked limitation in daily activities, social functioning, or concentration, persistence, or pace, accompanied by repeated manifestations of Sjogren's syndrome. (R. 64).

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"perform light work as defined in 20 CFR 404.1567(b) except for the following restrictions. She can occasionally reach overhead with the non-dominant left-upper extremity. She can occasionally crawl. She can never climb ropes or ladders. She can work in an environment with moderate noise levels, such as that found in an office environment. She can have no concentrated exposure to

extremely bright lights or flashing/strobing lights but could tolerate the lighting typically found in a usual office, retail or outdoor setting." (R. 64).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a hairstylist, retail manager, and catering manager. (R. 69–70). Because the demands of this work did not exceed Claimant's residual functional capacity, the ALJ concluded she would be able to perform those jobs as actually or generally performed. (R. 69–70). The ALJ also concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 70–71). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the light exertional level, including routing clerk, housekeeping cleaner, and marker. (R. 71). The ALJ then found Claimant was not under a disability from the disability onset date of October 14, 2015 through January 30, 2020, the date of her decision. (R. 71). The Appeals Council declined to review the matter on September 30, 2020, (R. 1–8), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48

(1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL

5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501); *Jarnutowski v. Kijakazi,* 2022 WL 4126293 (7th Cir. 2022). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. Step Three and Listing 14.10

The listings detail "impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §

6

404.1525(a); *see also,* 20 C.F.R. § 404.1529(d)(3). It is Claimant's burden to not only present medical findings that match or equal a listing, but to show that her impairments satisfy all the various criteria specified in that listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). To meet a listing is a "very high bar." *Garza*, 2022 WL 378663, at *2. When evaluating a claimant's condition and a listed impairment, an ALJ must discuss the listing by name and offer "more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *Scott v. Barnhart,* 297 F.3d 589, 595–96 (7th Cir. 2003); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002)). However, the ALJ need not "name and discuss every [l]isting in their written decisions," *Wilder*, 22 F.4th at 652, nor does she need to mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008).

Only listing 14.10 for Sjogren's syndrome is at issue in this case. There are two alternative ways to meet listing 14.10: part A, which essentially assesses the scope of the disease, and part B, which mostly evaluates the severity of a claimant's symptoms. The specific requirements of the listing, to which the ALJ cited, are as follows:

> A. Involvement of two or more organs/body systems, with:
>     1. One of the organs/body systems involved to at least a moderate level of severity; and
>     2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)

7

> or
>
> B. Repeated manifestations of Sjogren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1 § 14.10; (R. 63–64).

Claimant did not meet the above-described criteria, according to the ALJ, for several reasons. First, regarding part A, the ALJ noted that there was no record evidence to support the conclusion that two or more organs or body systems were involved to a moderate level of severity. (R. 64). This is outcome determinative, for even without addressing the constitutional symptoms or signs requirement, Claimant's failure to satisfy the involved body systems or organs prong makes it impossible for her to satisfy the listing.

Claimant now asserts that three organ systems were involved to a moderate level of severity: her musculoskeletal system, her neurologic system, and her mental system. [ECF No. 12] at 8. But moderate levels of severity in more than two of these systems is not borne out by the record evidence, which the ALJ analyzed in painstaking detail in other sections of her opinion. *Capman v. Colvin,* 617 F. App'x 575, 580 (7th Cir. 2015) (an ALJ's decision "should not be overturned simply because the relevant analysis is set forth at a different step of the process."). Setting aside whether Claimant's musculoskeletal system was affected to a moderate severity given the record evidence that she had left shoulder limitations and joint pain,

8

Claimant cites to no evidence, as is her burden, that she has moderate limitations involving her neurologic or mental system. Every medical opinion that assessed the effect of Claimant's Sjogren's syndrome diagnosis on her mental functioning – namely, the state agency consultant and psychological consultative examiner Dr. Murphy – concluded Claimant had no more than mild limitations in the four functional areas or that Claimant was "not currently experiencing significant impairment in functioning due to a mental health disorder." (R. 68–69). The ALJ not only relied upon the above-cited medical opinions concerning Claimant's mental functioning, but she also provided her own fulsome assessment of the "paragraph B" criteria at step two so that Claimant's mental limitations were clearly delineated before her listing level analysis at step three. (R. 62). Similarly, the ALJ noted in the portion of her opinion where she assessed the record evidence and objective findings contained therein that there appeared to be no neurological cause of Claimant's fibromyalgia, no evidence of neuropathy, and no irregular findings on a brain MRI performed in April of 2018. (R. 66, 67–68).

Further, although Claimant complained at the hearing of "fibro fog," or memory and cognitive issues related to her fibromyalgia, the longitudinal medical evidence does not support anything more than a mild limitation regarding Claimant's mental health. *See, e.g.,* (R. 62) ("Throughout the record, the claimant denied mental-health symptoms to various clinicians (see, e.g., 2F/14; 3F/156, 160; 7F/11; and 15F/32, 34, 51). Notably, she denied psychological problems to a medical consultative examiner (8F/10). However, in May 2018, the claimant declined a referral for psychiatric treatment, citing her pending application for disability (7F/11). In fact,

9

the claimant only started attending psychotherapy in March 2019 (15F)."); *Id.* (noting that at a psychological consultative examination, Claimant's doctor "provided no formal diagnosis, predicated largely on the limited nature of the claimant's allegations (13F/3)."); (R. 62–69).

In her attempt to establish listing level severity here on appeal, Claimant also asserts, as she must, that she meets the "two constitutional symptoms or signs" prong of parts A and B. The ALJ did not move past the first prong of part A – nor did she need to do so – but to the extent Claimant asks this Court to find listing 14.10(A) is met outright, a constitutional symptoms or signs finding is also unsupported by the record. The objective medical evidence reveals only a few notations that Claimant suffered from fatigue, and it was not characterized as severe by Claimant's medical providers. (R. 894) (Claimant "still feels some fatigue"); (R. 988) (Claimant "feels better in fatigue"). While Claimant herself testified that she experienced disabling fatigue, the ALJ did not credit that testimony to the extent it was inconsistent with the longitudinal record evidence. Nor does Claimant ask the Court to disturb that finding on appeal. Claimant's subjective symptom reports cannot, on their own, support a listing-level limitation in any event. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section[.]").

Regarding part B of listing 14.10, the ALJ found it was outcome determinative that Claimant had not established a marked limitation in her activities of daily living, social functioning, or concentration, persistence, or pace, citing to her fulsome evaluation of the "paragraph B" criteria at step two (which was in accord with the

10

opinions of both state agency consultants) as support. (R. 61–64). Claimant does not directly challenge the ALJ's part B analysis, instead focusing her efforts on part A, but the Court nevertheless finds the ALJ conducted more than perfunctory analysis of part B before concluding Claimant did not meet or equal listing level severity. *Id.*

Claimant essentially is asking that the Court reweigh the evidence and reach a different conclusion than the ALJ. The ALJ's listing level analysis, however, is supported by substantial evidence. Claimant must identify misstated or ignored evidence of record that met or equaled listing 14.10, *Sims v. Barnhart*, 309 F.3d 424, 429–30 (7th Cir. 2002), or show that a more thorough step three analysis could have led to a different outcome. *Jeske v. Saul*, 955 F.3d 583, 589–91 (7th Cir. 2020). Claimant has made neither showing here. As it stands, the ALJ thoroughly evaluated listing 14.10 and determined that Claimant did not meet her burden of demonstrating how she meets or medically equals that listing. (R. 63–64). She listed the factors required for Claimant to meet that listing, specifically described how Claimant did not meet those requirements, and supported that conclusion with a fulsome evaluation of the medical record at steps two, three, four, and in formulating her RFC. (R. 61–69). This is enough. *Barnett,* 381 F.3d at 668 (the ALJ's analysis must be more than perfunctory).

That no treating or examining physician identified findings equivalent in severity to the criteria of any listing also supports the ALJ's conclusion that Claimant did not meet or equal any listing, as does the fact that neither state agency consultant opined a listing level condition. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009); (R. 68–69). It is Claimant's burden now – as it was at the hearing – to bring forward

11

something more than conclusory statements that the ALJ "erred" at step three because Claimant disagrees with the ALJ's analysis. Claimant has not done so here, and the Court will not overturn the ALJ's reasoned conclusion that Claimant's impairments, considered both individually and in combination, did not meet or equal the criteria of listing 14.10.

## II. Claimant's RFC, Headaches, and Off-Task Time

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

Claimant argues that the RFC is flawed because it does not account for her headaches, which she says would cause a need for off-task time not incorporated into the RFC. But the ALJ did accommodate Claimant's headaches in the RFC, though she admittedly did not assign to them the significance that Claimant would prefer, and she did not find the headaches to be work-preclusive. The Court acknowledges it is difficult to determine the effect of Claimant's headaches on her ability to work full

12

time. The ALJ, though, considered that issue and did not find that condition prevented full-time work at a lower exertional level and with specific, tailored accommodations.

Here, the ALJ assessed the objective medical findings, medical opinions of record, Claimant's subjective symptom reports, and other record evidence before concluding that Claimant only "sporadically received limited treatment for her headaches, which conflicts with her allegations that she experienced several debilitating headaches every week." (R. 68). The ALJ confronted several instances in the record where Claimant needed treatment for pain related to headaches, including a single emergency room visit in April 2018, (R. 67–68), but noted that Claimant's headaches improved after Botox injections in 2019 and were well-controlled by medication management, including Tylenol. (R. 66, 68). The ALJ then tailored certain restrictions in the RFC to the headache symptoms she did find were supported by the record – namely, accommodating the light sensitivity Claimant reported by precluding "concentrated exposure to extremely bright lights or flashing/strobing lights" and finding that Claimant "could tolerate the lighting typically found in a usual office, retail or outdoor setting." (R. 34, 65, 68).

Claimant points to no medical evidence that supports her off-task time argument because of her headaches. On this record, that the ALJ did not believe the severity of Claimant's headaches necessitated an off-task finding does not constitute error. *See generally, Pepper v. Colvin,* 712 F.3d 351, 363 (7th Cir. 2013) (the ALJ sufficiently addressed the claimant's migraine headaches and supported the RFC with substantial evidence where the medical evidence indicated the claimant had

13

migraine headaches approximately every few months and his symptoms were relieved with medication, both of which the ALJ "appropriately found to be more credible than [the claimant's] testimony."). The ALJ's analysis of Claimant's RFC "[said] enough to enable review of whether the ALJ considered the totality of a claimant's limitations," including her headaches. *Lothridge v. Saul,* 984 F.3d 1227, 1233 (7th Cir. 2021). Even if reasonable minds could differ as to the effect of Claimant's headaches on her ability to work full time, the Court must defer to the ALJ's judgment and weighing of the evidence under these circumstances. *Zoch v. Saul,* 981 F.3d 597, 602 (7th Cir. 2020).

So long as the ALJ supports her RFC decision with substantial evidence and builds a logical bridge between the evidence and her conclusion, as she did here, her ultimate determination will stand. Claimant's argument to the contrary, which does little more than restate her subjective reports of disabling headaches and conclude they are work preclusive, does not persuade the Court that remand is required. Claimant may disagree with the ALJ's conclusion, but the "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make[.]" *Michael B. v. Berryhill,* 2019 WL 2269962, at *6 (N.D. Ill. 2019). The ALJ did not err in her RFC decision here.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 12] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 16] is granted.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 30, 2022